UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MIGUEL VIRUET,                                          :

                    Petitioner,               :

          - v -                                   :        **MEMORANDUM DECISION**

J. CALLADO,                                             :              18 Civ. 3315 (DC)

                    Respondent.               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:          MIGUEL VIRUET
                            Petitioner *Pro Se*
                            DIN 13-A-0181
                            Shawangunk Correctional Facility
                            P.O. Box 700
                            Wallkill, NY  12589

                            MELINDA KATZ, Esq.
                            District Attorney, Queens County
                            By:    John M. Castellano, Esq.
                                     Nancy Fitzpatrick Talcott, Esq.
                                     Assistant District Attorneys
                          125-01 Queens Boulevard
                          Kew Gardens, NY  11415
                              Attorney for Respondent

CHIN, Circuit Judge:

        In 2012, following a jury trial, petitioner Miguel Viruet was convicted of

second-degree murder and two counts of criminal possession of a weapon in the second

degree in the Supreme Court of the State of New York, Queens County (Holder, *J.*).  He

was sentenced to a term of imprisonment of twenty-five years to life for the murder, to run concurrently with terms of fifteen years' imprisonment for each of the counts of weapons possession; he was also sentenced to five-years' post-release supervision on the weapons counts. Dkt. 1 at 1; Dkt. 6 at 6-7. His conviction was affirmed by the Appellate Division, Second Department. *People v. Viruet*, 15 N.Y.S.3d 447 (2d Dep't 2015) ("*Viruet I*"). The New York Court of Appeals (Fahey, *J.*) granted Viruet's application for leave to appeal. *People v. Viruet*, 44 N.E.3d 948 (N.Y. 2015); *see also* Dkt. 7 at 152. In a split decision, the Court of Appeals affirmed the Appellate Division. *People v. Viruet*, 81 N.E.3d 828 (N.Y. 2017) ("*Viruet II*").

On June 4, 2018, proceeding *pro se*, Viruet filed this habeas petition (the "Petition") pursuant to 28 U.S.C. § 2254. Dkt. 1 at 1. The Queens County District Attorney, representing Respondent, filed its opposition on August 13, 2018. Dkt. 6. Viruet did not file a reply. No further entries appear on the docket until the case was reassigned to me on February 3, 2023.

For the reasons that follow, the Petition is DENIED.

## STATEMENT OF THE CASE

### I.      *The Facts*

The evidence at trial established the following facts. On May 5, 2010, nineteen-year-old O'Hara Christian was killed outside Scooby's Lounge, a nightclub located in Queens, New York. Christian was among the patrons of the club who fled

gunshots that were coming from across the street.  *See* Dkt. 7-3 at 195-96.

Earlier in the evening, Viruet's brother Stephen had been at Scooby's and had been punched by someone he could not identify.  *See* Dkt. 7-2 at 325-26.  When the bouncer, David Herbert, could not tell Stephen who hit him, Stephen called Viruet and asked him to come to the club.  *See* Dkt. 7-2 at 275; Dkt. 7-3 at 185-87.  Viruet soon arrived in his car, a dark-colored Honda; he was accompanied by a friend, Robert Garcia.  *See* Dkt. 7-3 at 1; Dkt. 7-3 at 273-74.  Viruet confronted Herbert and, when Herbert again could not identify who struck his brother, Viruet said he would be "coming back."  Dkt. 7-3 at 2-4, 191.  Not long after, someone near the club yelled, "they're back."  *Id.* at 194.  Viruet pulled up in his car and, standing across the street from Scooby's, fired shots toward the entrance, where Christian, Herbert, and Xavier White were standing.  *See id.* at 195-96.  Nine shell casings were recovered from the scene.  *See* Dkt. 7-2 at 313.

Christian died a short time later from a single gunshot wound to the lower back.  *See* Dkt. 7-3 at 226-29.

Two eyewitnesses identified Viruet as the shooter.  Herbert picked Viruet out of a police lineup and also identified Viruet in court.  *Id.* at 191, 196.  Although Herbert could not clearly see Viruet as he was shooting, Herbert "could tell by what [the shooter] was wearing and the way he looked that it was the same person that was

driving the car." *Id.* at 194.  White, too, identified Viruet in court, saying he had a "good

view" of Viruet during the shooting.  *Id.* at 1, 13.

Viruet fled the scene but, the next day, told Garcia's brother Jesse that he

had been part of the altercation at Scooby's and had fired a weapon.  *See id.* at 75-76.

Jesse and Viruet developed a plan for Viruet to flee to Florida.  *Id.* at 85-86.  As the pair

were about to cross the George Washington Bridge in Garcia's car, however, Garcia

abandoned the plan and dropped Viruet off in the Bronx.  *Id.* at 86.  Viruet was arrested

July 22, 2010, in Central Park.  *Id.* at 134.

## II.    *Procedural History*

### A.    *State Court Proceedings*

At trial, the People called ten witnesses.  *See* Dkt. 7-2, 7-3.  Among them

were Herbert, White, Robert Garcia, Jesse Garcia, police officers, a firearms expert, and

a medical examiner.  *See id.*  The defense did not put on a case.  *See* Dkt. 7-3 at 247.

The defense did, however, ask the court to instruct the jury that it could

draw "an adverse inference based upon" surveillance footage from the nightclub that

depicted some of the events in question but subsequently went missing.  Dkt. 7-3 at 241.

The arresting detective had viewed and obtained a copy of the footage from a camera

located inside the club's front door.  *Id.* at 128.  When the defense requested the footage

in discovery, however, it could not be produced because the copy in the detective's

custody had not been properly vouchered and could not be found; moreover, the

4

nightclub had shut down, and the police could not locate the owner. *Id.* at 129-31.
Herbert and the detective testified that the footage showed Christian, White, and
Herbert, among others, standing at the club's door as shots were fired. *See Viruet II*, 81
N.E.3d at 830. Herbert testified that the camera did not face the direction from which
the shots came. *Id.* The detective testified that the area covered by the camera "barely
leaves the sidewalk" but acknowledged that without the footage, it was impossible to
say how far the camera angle extended. Dkt. 7-3 at 172-73.

   The trial court denied the defense's request for an adverse inference
instruction. *Id.* at 245. The court observed that "there is no argument that can be made
that had that tape been produced there would be something that would be . . . helpful
to the defense because all the evidence as to . . . what is on the tape has already been
brought out." *Id.* "[F]or the jury to think anything else would be purely speculative and
that would not be correct." *Id.*

   The jury convicted Viruet of second-degree murder, in violation of N.Y.
Penal Law § 125.25(1), (2), and two counts of criminal possession of a weapon in the
second degree, in violation of N.Y. Penal Law § 265.03(1)(b), (3).[1] The court sentenced
Viruet to a term of imprisonment of twenty-five years to life for the murder, to run
concurrently with terms of fifteen years' imprisonment for each of the weapons counts.

---

[1]  The Indictment by which Viruet was charged included a second count of second-degree
murder, on a theory of depraved indifference, and a count of reckless endangerment in the first
degree. The People dismissed these counts before resting. *See* Dkt. 7-3 at 240.

The court also sentenced Viruet to concurrent five-year terms of post-release supervision for each of the weapons counts.  Dkt. 1 at 1; Dkt. 6 at 6-7.

On direct appeal, the Appellate Division unanimously affirmed the conviction.  *Viruet I*, 15 N.Y.S.3d at 448.  As to the adverse inference instruction, it held the trial court had not erred because "[t]here was no evidence that the video camera recorded anything relevant to the case, and the evidence suggested otherwise." *Id.* at 448-49 (citations omitted).  The Appellate Division concluded that Viruet did not suffer prejudice, not only for this reason but also because Viruet's counsel cross-examined the detective about the loss of the footage and then referred extensively to the missing footage in his summation.  *Id.* at 449.  The court rejected all of Viruet's other grounds for appeal.  *Id.* at 448-49.

Viruet sought leave to appeal to the Court of Appeals, limiting his application to the issue of the adverse inference charge.  Dkt. 7 at 127.  The Court of Appeals (Fahey, *J.*) granted leave to appeal.  *People v. Viruet*, 44 N.E.3d at 948. Following merits briefing and oral argument, a divided Court of Appeals affirmed the decision of the Appellate Division.  *Viruet II*, 81 N.E.3d at 829 (majority opinion); *id.* at 832 (Wilson, *J.*, dissenting).  Both the majority and the judges in dissent held that the trial court had erred by failing to give an adverse inference instruction because the footage was "certainly relevant to the case," Viruet's counsel had acted with due diligence, and testimony about what was on the footage "came in large part from a

witness whose own actions created the need to speculate about its contents." *Id.* at 831
(citations and internal quotation marks omitted).  Nevertheless, the majority held the
error was harmless because the People's case was overwhelmingly strong, considering
the eyewitness testimony, Viruet's confession to Jesse Garcia, and circumstantial
evidence identifying Viruet as the perpetrator.  *Id.*  The judges in dissent, however,
disagreed and would have remanded the case for a new trial.  *Id.* at 832 (Wilson, J.,
dissenting).  They concluded the People's case was not overwhelming because, *inter alia*,
the eyewitnesses had not seen Viruet prior to the night of the shooting, Herbert
misidentified Viruet's brother in a photo array, and Jesse Garcia's testimony may have
been biased as a result of his plea agreement.  *Id.* at 833-34.

B.      *Proceedings in This Court*

Viruet timely filed his Petition, asserting four claims.  Three of them
repeat nearly verbatim the grounds cited in his appeal to the Appellate Division.  First,
Viruet contends that the trial court deprived him of his right to a public trial because it
ordered spectators to leave the courtroom during a portion of the jury selection process.
Dkt. 1 at 3.  Next, he argues that the evidence adduced at trial was insufficient to prove
beyond a reasonable doubt that he was the assailant.  Specifically, Viruet points to the
allegedly inconsistent accounts given by eyewitnesses as well as Jesse Garcia's
unreliability on account of having received a lenient sentence in exchange for his
testimony.  *Id.*  Third, Viruet argues the trial court erred in charging the jury when it (1)

refused to instruct the jury it could draw an adverse inference from the missing

surveillance footage and (2) failed to give an expanded charge on the topic of

identification. *Id.* Viruet's fourth and final claim, drawn almost verbatim from his brief

in the Court of Appeals, is substantially the same as his third: "Appellant was entitled

to an adverse inference instruction based on the lead detective's loss of video

surveillance of the events leading up to the shooting, of the shooting itself, and of the

eyewitnesses on whom the [P]eople relied to connect appellant to the shooting." *Id.* at 4.

The District Attorney's Office filed a response to the Petition in August

2018.  Dkt. 6.  Viruet did not submit a reply.

## DISCUSSION

### I.      *Federal Review of State Convictions*

As a threshold matter, 28 U.S.C. § 2254 provides that federal courts may

review state-court convictions "only on the ground that [the petitioner] is in custody in

violation of the Constitution or laws or treaties of the United States."  28 U.S.C.

§ 2254(a).  The Supreme Court has "stated many times that federal habeas corpus relief

does not lie for errors of state law." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (citation

and internal quotation marks omitted).

A federal court may not grant a habeas petition where the petitioner is in

custody pursuant to a judgment of a state court unless the petitioner "has exhausted the

remedies available in the courts of the State" or such process is unavailable or

ineffective.  28 U.S.C. § 2254(b)(1)(A); *see id.* § 2254(b)(1)(B); *Jackson v. Conway*, 763.F.3d 115, 133 (2d Cir. 2014) ("[A] state prisoner is required to exhaust all of his available state remedies before a federal court can consider his habeas application.").

Moreover, "federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." *Cone v. Bell,* 556 U.S. 449, 465 (2009) (citation omitted).  That is, federal courts may not review a state court ruling that "fairly appear[s] to rest primarily on state procedural law," so long as the procedural bar is "adequate to support the judgment." *Murden v. Artuz,* 497 F.3d 178, 191-92 (2d Cir. 2007) (citations omitted). Federal courts in this Circuit have repeatedly held that the gatekeeping provisions of New York laws governing a petitioner's failure to raise a claim on direct appeal "represent[] the application of a 'firmly established and regularly followed' New York rule." *Williams v. Goord,* 277 F. Supp. 2d 309, 318-19 (S.D.N.Y. 2003) (citations omitted).

Finally, a federal court may not grant a habeas petition with regard to a claim that was adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857

F.3d 466, 477 (2d Cir. 2017).  Hence, when a claim is adjudicated on the merits, the state

court must be accorded "substantial deference." *Fischer v. Smith*, 780 F.3d 556, 560 (2d

Cir. 2015).  "A federal court may reverse a state court ruling only where it was 'so

lacking in justification that there was . . . [no] possibility for fairminded disagreement.'"

*Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S.

at 103); *see also Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (per curiam).

II.     *Analysis*

        Applying these legal principles, all but one of Viruet's claims are patently

unexhausted and procedurally barred.  The remaining claim fares no better because it

does not present a federal constitutional issue, is unexhausted and procedurally barred

as to its federal constitutional significance, and fails on the merits.

    A.      *Viruet's Unexhausted and Procedurally Barred Claims*

        Most of Viruet's claims must be dismissed under 28 U.S.C. § 2254(b)(1)(A)

because he did not exhaust his remedies in state court.  In the Appellate Division,

Viruet raised claims about the closure of the courtroom to spectators during a portion of

jury selection, the sufficiency of the evidence, and the alleged errors in the jury charge.

*See* Dkt. 7 at 2-3.  When he applied to the Court of Appeals for leave to appeal, however,

Viruet raised only a single issue: whether he was entitled to an adverse inference charge

because the police lost the surveillance footage.  *See id.* at 142-43; *see also id.* at 147

(People's response to a single "Issue" raised by Viruet).  After Judge Fahey granted leave

to appeal, Viruet's brief in the Court of Appeals likewise contained a single point

heading:  He contended he was "entitled to an adverse inference instruction based on

the lead detective's loss of video surveillance of the events leading up to the shooting, of

the shooting itself, and of the eyewitnesses on whom the People relied to connect

Appellant to the shooting."  *Id.* at 155.  Because Viruet did not raise his remaining claims

in the Court of Appeals, as to them he has not "exhausted the remedies available in the

courts of the state."  28 U.S.C. § 2254(b)(1)(A).  A habeas petitioner must "fairly present[]

his claim in each appropriate state court (including a state supreme court with powers

of discretionary review)."  *Bierenbaum v. Graham*, 607 F.3d 36, 47 (2d Cir. 2010) (quoting

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004)).

        These claims are also procedurally barred, meaning Viruet may not now

return to state court to seek collateral review.  Under New York law, a court

> must deny a motion to vacate a judgment when . . . [a]lthough sufficient
> facts appear on the record of the proceedings underlying the judgment to
> have permitted, upon appeal from such judgment, adequate review of the
> ground or issue raised upon the motion, no such appellate review or
> determination occurred owing to the defendant's . . . unjustifiable failure
> to raise such ground or issue upon an appeal actually perfected by him.

N.Y. Crim. Proc. Law § 440.10(2)(c).  This is, as I noted above, a "firmly established and

regularly followed New York rule."  *Williams*, 277 F. Supp. 2d at 318-19 (internal

quotation marks and citations omitted).

B.      *Viruet's Claim about the Adverse Inference Charge*

Viruet's remaining claim is that the trial court erred when it refused to

instruct the jury it could draw an adverse inference from the fact that the police lost the

surveillance footage.  *See* Dkt. 7 at 28 (Appellate Division brief), 129 (application for

leave to appeal), 155 (Court of Appeals brief).  This claim falters at several steps of the

analysis under 28 U.S.C. § 2254.

First, Viruet has not framed his claim as a matter of federal law.  Because

this Court's jurisdiction under section 2254 is limited to violations of the U.S.

Constitution and federal laws, I lack jurisdiction to review alleged violations of state

law.  *See* 28 U.S.C. § 2254(a); *Swarthout*, 562 U.S. at 219.  Even construed liberally, the

Petition does not refer to federal law.  *See* Dkt. 1 at 3-4.

Second, even had Viruet framed the Petition in terms of federal law,

however, his claim would be unexhausted and procedurally barred.  As to exhaustion,

on his direct appeal Viruet relied almost exclusively on cases decided under New York

law.  He focused primarily on *People v. Handy*, 988 N.E.2d 879, 882 (N.Y. 2013), in which

the Court of Appeals held that, "under the New York law of evidence," a criminal

defendant is entitled to an adverse inference charge where evidence "likely to be

material . . . has been destroyed by agents of the State."  The court specifically declined

"to address any constitutional issue."  *Id.*  Viruet cited other New York authorities as

well, including *People v. Blake*, 21 N.E.3d 214, 216-17 (N.Y. 2014), which reaffirmed

*Handy*.  But Viruet referred to no case holding that the absence of an adverse inference

charge in circumstances like his violates federal law.  *See* Dkt. 7 at 28-32, 129-35, 178-97.

Although he referred in passing to the Fifth and Fourteenth Amendments to the U.S.

Constitution, *see, e.g., id.* at 179, as well as to seminal Supreme Court cases such as *Giglio*

*v. United States*, 405 U.S. 150 (1972), *see, e.g.,* Dkt. 7 at 184, Viruet did not "adequately put

the state courts on notice of the constitutional thrust of his claim." *Daye v. Att'y Gen. of*

*N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982) (describing various ways a defendant "may fairly

present to the state courts the constitutional nature of his claim").  For this reason, it is

not surprising that both the majority and dissenting opinions of the Court of Appeals

do not describe Viruet's claim in federal constitutional terms.[2]  The majority opinion, in

fact, expressly characterizes the trial court's error as one of "nonconstitutional

magnitude." *Viruet II*, 81 N.E.3d at 831.

      Third, for the same reason his other claims are procedurally defaulted,

Viruet may not now return to state court to litigate any federal dimension of his claim

about the jury charge.  As I observed above, New York law obligates courts to deny a

motion to vacate a judgment when the basis for the motion existed at the time of the

defendant's direct appeal yet the defendant did not raise the issue.  *See* N.Y. Crim. Proc.

---

[2]     Nor were there references to federal law at oral argument before the Court of Appeals, where Viruet's counsel again relied primarily on *Handy*.  See Transcript of Oral Argument, *People v. Viruet*, No. 60 (N.Y. Apr. 27, 2017), https://nycourts.gov/ctapps/arguments/2017/Apr17/ Transcripts/042717-60-Oral-Argument-Transcript.pdf.

Law § 440.10(2)(c).  Viruet does not argue that any of the exceptions to procedural

default apply, and Respondent's arguments are persuasive that Viruet, who was well-

counseled throughout his direct appeal, (1) cannot show cause for his default and (2)

has brought forward no evidence of his actual innocence.  *See* Dkt. 6 at 29-32.

Finally, even were I to reach the merits of Viruet's claim, he has made no

argument to overcome the "substantial deference" due to the Court of Appeals.  *Fischer*,

780 F.3d at 560.  Because Viruet does not argue the Court of Appeals's decision "was

contrary to, or involved an unreasonable application of, clearly established Federal

law," 28 U.S.C. § 2254(d)(1), he must show that the decision "was based on an

unreasonable determination of the facts in light of the evidence presented." *Id.*

§ 2254(d)(2).  This he cannot do.  The thoughtful dueling opinions authored by members

of Court of Appeals reveal that the judges in the majority and dissent engaged in a

"fairminded disagreement" about whether the trial court's error in not charging the jury

as the defense requested was harmless.  *Vega*, 669 F.3d at 126 (citation and internal

quotation marks omitted).  None of the judges questioned whether the evidence --

which included two eyewitness identifications, Viruet's confession, and the

consciousness of guilt revealed by his aborted plan to flee to Florida -- was sufficient to

sustain Viruet's conviction.  In fact, all the judges agreed that "the evidence would

support a jury verdict of guilt," even though the judges in dissent concluded a

14

reasonable jury could also have acquitted Viruet.  *Viruet II*, 81 N.E.3d at 833 (Wilson, *J.*, dissenting).

## *CONCLUSION*

Viruet has failed to show any basis for relief under 28 U.S.C. § 2254. Accordingly, the Petition is denied.  Additionally, I decline to issue a certificate of appealability because Viruet has not made a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253.  Pursuant to 28 U.S.C. § 1915(a)(3), I certify that any appeal taken from this decision and order would not be taken in good faith.

The Clerk of the Court shall enter judgment accordingly and close this case.  The Clerk of Court is respectfully directed to mail a copy of this memorandum decision and the judgment to Viruet.

SO ORDERED.

Dated:      New York, New York
            February 13, 2023

DENNY CHIN
United States Circuit Judge
Sitting by Designation